IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| LORI COLE | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:10-0774 |
| | ) | JUDGE NIXON |
| RIVERGATE DERMATOLOGY | ) | |
| AND SKIN CARE CENTER, | ) | |
|     Defendant. | ) | |

## INITIAL CASE MANAGEMENT ORDER

Pursuant to Local Rule 6.01(d), and as evidenced by the signatures of counsel below. The Parties submit the following proposed Initial Case Management Report in accordance with this Court's instructions at the initial case management conference held on October 6, 2010 at 9:00am.

    I.    **JURISDICTION AND VENUE:**

This court has subject matter jurisdiction over the federal claims in this dispute pursuant to 28 U. S. C. § 1331. This Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U. S. C. § 1367.

Venue is proper in this Court pursuant to 28 U. S. C. § 1391, because a substantial portion of the acts giving rise to this lawsuit occurred in this judicial district.

    II.    **PARTIES THEORIES OF THE CASE**

    A.    **Plaintiff's theory of the case:**

The Plaintiff began her employment with the Defendant on June 11, 2007 as a Medical Assistant. During her employment, Plaintiff received appropriate raises and generally acceptable performance reviews. On or about October 2007, Plaintiff informed Defendant of her disability,

epilepsy. Defendant was aware of and perceived Plaintiff to have a disability as a result of her medical condition and diagnoses. On August 14, 2009, Plaintiff experienced an on the job injury related to her disability. On August 17, 2009, the nursing supervisor, Charlotte Johnson and the office manager Kristin Perez informed Plaintiff that the owner, Dr. Keith Loven did not want her performing the essential functions of her job because of a possible liability. Later that afternoon Plaintiff was discharged from her employment. Several times during her employment Plaintiff requested that she be placed in a clerical position to accommodate her disability and each time she was denied. At the time of her termination, Plaintiff again requested that she be allowed to move to a vacant clerical position to accommodate her disability but was again denied.

B. **Defendant's theory of the case:**

Defendant is a dermatology practice with two physician owners and a physician assistant, as well as approximately 24 other employees. The staff members either provide direct patient care, or work in clerical or administrative, non-patient care positions.

Plaintiff was hired as a medical assistant on June 11, 2007. Defendant has a very busy practice and the medical assistants are involved in direct patient care, both prior to the physicians or physicians' assistant seeing them, and during. It is an essential function of that position that treatment be provided without creating an unnecessary risk or danger to the patients. This includes precision treatment with dangerous instruments such as needles containing anesthetic.

Plaintiff has a history of performance problems at Defendant, for which she has been disciplined. She was most recently placed on probation on July 2, 2009 for performance issues and a consistent negative attitude at work. Performance issues and attitude had been addressed in some manner in Plaintiff's prior performance reviews. Defendant had also recorded incidents of this type of behavior by Plaintiff, two of which resulted in formal discipline and others of which

2

had not.

Plaintiff was terminated on Monday, August 17, 2009 after an incident involving a direct threat to patient safety the prior Friday, August 14, 2009. Specifically, on the subject date, Plaintiff was numbing a patient, using a needle, under his left eye lid. Plaintiff apparently had a seizure while in the process of administering the anesthetic. She left the treatment room and approached another medical assistant, telling her she did not remember numbing the patient and that he (the patient) needed to be checked. The other medical assistant checked on the patient and he was fine. The patient's treatment was concluded by others and was successful.

Defendant made the determination that it could not continue to employ Plaintiff in a patient care capacity because of the direct threat to patient safety. This was not the first incident of Plaintiff having a seizure at work, but was the first time she had one while treating a patient with a dangerous instrument. Defendant did not have a non-patient care position available for the Plaintiff for which the Plaintiff was qualified. She was thus discharged the following business day and paid, in addition to her vacation and time worked, for 80 hours of severance.

Specifically, regarding its non-patient care positions, Defendant had previously attempted to cross-train Plaintiff in non-patient care tasks, specifically triaging patients who called, handling the reception desk, handling phone inquiries for appointments and using the computer scheduling system. Plaintiff was unable and/or unwilling to learn these tasks and Defendant determined she was not qualified for any of the non-patient care positions it had.

Defendant does not know what Plaintiff's medical condition is, and whether or not it qualifies as a disability under the Americans With Disabilities Act or a handicap under the Tennessee Handicap Discrimination Act. Plaintiff never identified a particular medical condition to Defendant, but Defendant was aware she allegedly had a condition that involved seizures. To

the extent Plaintiff had asked for accommodations in the past, Defendant provided them. Plaintiff was not qualified for any non-patient care positions Defendant had at the time of her termination, and Defendant had attempted to train her on those positions.

Defendant terminated Plaintiff because she posed a direct threat to patients and it did not have a position for her that did not involve a direct threat for which she could perform the essential functions of the job with or without a reasonable accommodation.

### III. SCHEDULE OF PRETRIAL PROCEDINGS

#### A. Rule 26 (a)(1) Disclosures

The Parties shall make Rule 26 (a)(1)(A) through (E) disclosures within thirty days from the date of the initial case management conference. Witnesses are subject to supplementation form each party.

#### B. Identification of the issues:

(1) Issues resolved: jurisdiction and venue.

(2) Issues still in dispute: liability and damages.

#### C. Staging of Discovery:

The Parties shall complete all written discovery on or before March 14, 2011, and depose all fact witnesses on or before April 4, 2011. The Parties shall file any discovery related motions by April 20, 2011.

The Plaintiff shall identify and disclose all expert witnesses and expert reports on or before May 6, 2011. Defendant shall disclose and identify all expert witnesses on or before June 6, 2011. The Parties shall depose all expert witnesses on or before June 24, 2011.

No motions concerning discovery are to be filed until after the Parties have conferred in good faith and are unable to resolve the differences.

4

D. **Dispositive Motions**

The Parties shall file all dispositive motions on or before August 1, 2011. Responses to dispositive motions shall be filed on or before September 1, 2011. Optional replies shall be filed on or before September 15, 2011. If dispositive motions are filed before the deadline. Responses and reply dates shall move forward accordingly. Briefs should not exceed twenty–five (25) pages and any reply is limited to five (5) pages absent permission from the Court to exceed the page limitation.

E. **Other Deadlines**

The Parties shall file any motions to amend the pleadings on or before January 15, 2011.

F. **Subsequent case management conferences:**

The Parties may request subsequent case management conference at any time by contacting the magistrate judge.

IV. **ALTERNATE DISPUTE RESOLUTION**

At the present, the Parties do not anticipate the need for a settlement conference. However, in the event a conference does become necessary either party may request a settlement conference.

V. **Target Trial Date:**

At this time it appears likely a trial will be necessary in the case. A jury trial has been requested and is anticipated to last approximately two (2) to three (3) days. The target trial date is January 2012.

It is so **ORDERED:**

ENTERED this the _____ day of October, 2010.

JULIET GRIFFIN
United States Magistrate Judge

5

APPROVED FOR ENTRY:


*s/ Jeffery S. Frensley*
**JEFFERY S. FRENSLEY, ESQ. # 17358**
211 Third Avenue North
P. O. Box 198288
Nashville, Tennessee 37219-8288
615-256-2111
*Counsel for Plaintiff Lori Cole*


*s/ Anne C. Martin*
**ANNE C. MARTIN, ESQ. # 15536**
BONE, MCALLESTER, NORTON PLLC
511 Union Street
Suite 1600
Nashville, Tennessee 37219
(615) 238-6318
*Counsel for Defendant Rivergate Dermatology Center*